LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

AMAEL FEUILLARD,
*on behalf of himself,*
*FLSA Collective Plaintiffs and the Class,*                    Case No.:

                                    Plaintiff,        **CLASS AND COLLECTIVE**
                                                      **ACTION COMPLAINT**

                        v.                             Jury Trial Demanded

LVEB, LLC
        d/b/a PIERRE'S,
and PIERRE JOSEPH WEBER,

                                    Defendants.

---

        Plaintiff, AMAEL FEUILLARD ("Plaintiff FEUILLARD" or "Plaintiff"), on behalf of

himself and others similarly situated, by and through his undersigned attorneys, hereby files this

class and collective action Complaint against Defendants, LVEB, LLC d/b/a PIERRE'S

("Corporate Defendant"), and PIERRE JOSEPH WEBER ("PIERRE WEBER" or "Individual

Defendant," and together with Corporate Defendant, "Defendants"), and states as follows:

                                    **INTRODUCTION**

        1.    Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§

201 *et. seq.* ("FLSA"), that he is entitled to recover from Defendants: (1) unpaid wages due to

invalid tip credit, (2) illegally retained gratuities, (3) unpaid wages including overtime due to a fixed salary, (4) unpaid wages due to improper lodging credit, (5) liquidated damages, and (6) attorneys' fees and costs.

2.    Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from Defendants: (1) unpaid wages due to invalid tip credit, (2) illegally retained gratuities, (3) unpaid wages including overtime due to a fixed salary, (4) unpaid wages due to improper lodging credit, (5) unpaid spread of hours premium, (6) statutory penalties, (7) liquidated damages, and (8) attorneys' fees and costs.

3.    Plaintiff further alleges, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*., that he is entitled to recover from Defendants for Defendants' hostile work environment and unlawful discrimination against him.

4.    Plaintiff further alleges that he is entitled to recover from Defendants for breach of contract and is entitled to damages therefore of the Defendants.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.    Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## PARTIES

7.    Plaintiff AMAEL FEUILLARD is a resident of Suffolk County, New York.

8.    Corporate Defendant LVEB, LLC d/b/a PIERRE'S owns and operates a restaurant under the trade name Pierre's located at 2468 Main St, Bridgehampton, NY 11932.

9.    Corporate Defendant LVEB, LLC d/b/a PIERRE's is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 2468 Main St, Bridgehampton, NY 11932 and an address for service of process located at Pierre's, PO Box 2200, Bridgehampton, NY 11932. Defendants operate the Restaurant through Corporate Defendant. Individual Defendant is the owner of LVEB, LLC d/b/a PIERRE's.

10.    Individual Defendant PIERRE WEBER is the owner and principal of Corporate Defendant PIERRE WEBER exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiff, FLSA Collective Plaintiffs and the Class, PIERRE WEBER exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all times, employees could complain to PIERRE WEBER regarding any of the terms of their employment, and PIERRE WEBER would have the authority to effect any changes to the quality and terms of employees' employment. PIERRE WEBER ensured that employees effectively serve customers and that the business is operating efficiently and profitably. PIERRE WEBER exercised functional control over the business and financial operations of all Corporate Defendants. PIERRE WEBER had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

11.    At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

12.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants.

3

## FLSA COLLECTIVE ACTION ALLEGATIONS

13.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including waiters, servers, captains, bussers, food runners, baristas, food preparers, cooks, bartenders, and barbacks, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

14.    At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to (i) pay them their proper wages including overtime due to fixed salary, and (ii) deducting an improper lodging credit. A subclass of tipped employees has a claim for unpaid wages, including those from an improperly deducted tip credit, and a claim for illegally retained tips. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

15.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

16.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including waiters, servers, captains, bussers, food runners, baristas, food preparers, cooks, bartenders, and barbacks, among others)

employed by Defendants at the Restaurants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

17.    All said persons, including Plaintiff, are referred to herein as the "Class". The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

18.    The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of both the Class and the Tipped Subclass.

19.    Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages, including overtime, due to fixed salary, (ii) failing to pay proper wages due to an improper lodging credit, (iii) failing to pay spread of hours premium, (iv) failing to provide Class members with proper wage statements with every payment of wages, and (v) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the NYLL.

20.    With regard to Plaintiff and the Tipped Subclass, Defendants also failed to pay them their proper wages as Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the NYLL. Plaintiff and the Tipped Subclass suffered from Defendants' failure to pay wages due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked each workweek, (iii) implemented an invalid tip pooling scheme in which managers participated in the tip pool and (iv) illegally retained tips, (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

21.    Plaintiff claims that Defendants illegally retained gratuities because he was subject to a tip pooling scheme where managers, including PIERRE WEBER, who did not service customers participated in the tip pool.

22.    Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiffs for all hours, including overtime hours worked.

23.    Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

24.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent in both class action litigation and employment litigation and have previously represented Plaintiff in wage and hour cases.

25.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former

employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;

b.    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class members;

c.    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class members for their work;

d.    Whether Defendants properly notified Plaintiff and the Class members of their hourly rates and overtime rates;

e.    Whether Defendants paid Plaintiff and Class members the proper overtime compensation under the NYLL;

f.    Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

g.    Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

h.    Whether Defendants caused tipped employees to engage in non-tipped duties exceeding twenty percent (20%) of each workweek;

i.   Whether Defendants took the proper amount of tip credit allowance for each payment period under the NYLL;

j.   Whether Defendants established an invalid tip pooling arrangement by illegally including managers in the tip pool;

k.   Whether Defendants established an invalid tip pooling arrangement by instituting an invalid tip pooling scheme in which Plaintiff and the Tipped Subclass did not agree to;

l.   Whether Defendants retained any portion of the gratuities for their tipped employees;

m.   Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the NYLL;

n.   Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the NYLL;

o.   Whether Defendants paid Plaintiff and Class members the proper wage for all hours worked;

p.   Whether Defendants properly compensated Plaintiff and Class members their proper overtime under NYLL;

q.   Whether Defendants paid Plaintiff and Class members for all hour worked given Defendants' practice of taking lodging credits that were improper under NYLL; and

r.   Whether Defendants paid Plaintiff and Class members their spread of hours premium for days worked in excess of ten (10) hours per workday.

## STATEMENT OF FACTS

28.    In or about July 6, 2020, Plaintiff was hired by Defendants to work as a captain at Defendants' Pierre's restaurant, located at 2468 Main St, Bridgehampton, NY 11932. Plaintiff's employment with Defendants terminated on or about September 2020.

29.    Throughout Plaintiff's employment with Defendants, Plaintiff's work schedule varied weekly based on the shift he worked. The morning shift was from 10:00 a.m. to 5:00 p.m. for a total of seven (7) hours. The evening shift was from 4:00 p.m. to 11:00 p.m. for a total of seven (7) hours. Double shifts were from 10:00 a.m. to 11:00 p.m. for a total of thirteen (13) hours. Throughout his employment Plaintiff worked four (4) to five (5) days per week anywhere from a total of twenty-eight and half (28.5) hours to fifty (50) hours.

30.    Throughout Plaintiff's employment with Defendants, Plaintiff was paid a fixed salary of two hundred fifty dollars ($250) per shift with a five percent (5%) share in tips. There was never any agreement that this fixed salary would cover overtime hours over forty (40).

31.    Plaintiff was improperly classified as an exempt employee. Plaintiff spent seventy-five percent (75%) of his time waiting tables and engaged in other tipped activities. Plaintiff spent five percent (5%) of his time doing inventory, producing shift reports, and other nontipped activities. He spends another twenty percent (20%) of his time doing manual labor work like cleaning the restaurant and engaging in pre and post shift procedures.

32.    Plaintiff contracted with Defendants, who agreed to the pay two hundred fifty dollars ($250) per shift with a five percent (5%) share in tips. However, at least twice a week when Plaintiff worked a double shift, he was only paid for one shift. Defendants also changed the received tip percentage from five percent (5%) to two and a half percent (2.5%) without consent from Plaintiff.

33.    Defendants always deducted one hundred twenty dollars ($120) per week from Plaintiff, FLSA Collective Plaintiffs and Class members wages for lodging. However, the deduction was improper because the lodging provided was woefully inadequate. For example, the rooms were unfinished with exposure to plywood walls, had concrete flooring, and had no windows. Furthermore, the men's bathroom was also a temporary structure with exposed wood which gathered mold and mildew and had exposed electrical outlets installed carelessly next to the open shower. In addition, the staff house had no gas and no heating or air conditioning. The lodging facilities were inhabitable and violated housing code. Therefore, the housing was not for the benefit of Plaintiff and as a result, the deduction of one hundred twenty dollars ($120) per week from his wages for lodging was improper. Plaintiff, FLSA Collective Plaintiffs and Class members also did not receive prior notice that a lodging credit would be claimed.

34.    Throughout his employment, when Plaintiff worked in excess of ten (10) hours per workday he was not compensated with his spread of hours premium. Class members worked similar hours that regularly exceeded ten (10) hours per day and were not compensated their spread of hours premium.

35.    Throughout Plaintiff's employment with Defendants, he was required to wait tables and perform non-tipped manual labor activities such as opening and closing procedures the restaurant as well as cleaning. Even though Defendants required tipped employees to engage in non-tipped manual labor activities for hours exceeding twenty percent (20%) of the total hours worked daily, Defendants improperly claimed tip credit for all hours worked by tipped employees. Similarly, a tipped subclass of FLSA Collective Plaintiffs and the Tipped Subclass suffered.

36.    Plaintiff, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass suffered from Defendants' retention of gratuities through Defendants' invalid tip pooling arrangement.

Defendants implemented a policy at the Restaurants where Plaintiff and other non-exempt tipped employees were subject to a tip pool they did not agree to, which was set by and enforced by Defendants, wherein managers including PIERRE WEBER, participated in the tip pool. PIERRE WEBER is a manager that has the power to hire and fire, set schedules, open and close the restaurant, PIERRE WEBER is required to count money in the cash register, and they count and divide the tips. As manager, he is paid on a salary basis, and does not serve customers. As a result, Defendants illegally retained tips through the tip pooling arrangement by retaining a portion of the tips to be distributed to Defendants' managers. Such improper tip pooling policy invalidates Defendants' tip credit allowance.

37.    With respect to Plaintiff, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform them that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them in violation of the FLSA; (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement in violation of the FLSA; (iv) failed to inform that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement in violation of the FLSA, (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked each workweek in violation of the FLSA and NYLL, (vi) illegally retained gratuities, (vii) implemented an invalid tip pooling because Defendants retained tips, (viii) implemented an invalid tip pooling by including managers, who do not service customer, (ix) failed to accurately track daily tips earned or maintain records thereof, (x) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the

NYLL, and (xi) failed to provide a proper wage statement with every payment of wages informing Plaintiff and other tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL.

38.    In addition to the wage and hour violations, Defendants also discriminated against Plaintiff on the basis of his race/national origin.

39.    Plaintiff's national origin is France. Throughout his employment, Plaintiff suffered through discrimination based on his race/national origin from the manager and owner PIERRE WEBER. Plaintiff suffered from harassment, verbal insults, abusive tones, and was treated far worse than any of his coworkers in. Plaintiff suffered throughout his employment period and ended up losing thirty pounds (30 lbs) as a result of the stress caused by the discrimination and hostile work environment that he endured.

40.    One example of the discrimination, harassment and verbal abuse Plaintiff suffered at the hands of PIERRE WEBER were the derogatory comments made by PIERRE WEBER against Plaintiff as a French person. One such incident was that PIERRE WEBER repeatedly mentioned to Plaintiff his desire to have specifically French colonial slave labor generating power for his restaurant.

41.    There were many other examples of the discrimination and targeted abuse suffered by Plaintiff throughout his employment. For example, during an electrical outage that affected the restaurant, the entire staff was instructed to return home for the day. However, Plaintiff was specifically instructed to stay behind to accept a large package delivery in the dark and dangerous conditions caused by the electrical outage. PIERRE WEBER said, "Everyone goes home, except Frenchie," in reference to Plaintiff. PIERRE WEBER continued to only assign Plaintiff tasks on this day.

42.    Another example is in regard to the extension of the outdoor terrace. During peak hours the area would be extended by four extra tables. This practice continued until PIERRE WEBER agreed to discontinue doing so in accordance with requests by the Fire Marshall. Following this incident, PIERRE WEBER would verbally abuse Plaintiff about the extra tables regardless of what Plaintiff did. On days the tables were placed PIERRE WEBER would yell at Plaintiff about why they were placed, and on days the tables were not placed PIERRE WEBER would complain about why the tables were not placed and would call Plaintiff, "a dumb French clown," and stated that "it's not possible for a Frenchman to be so stupid, he does not understand anything."

43.    Another example is the treatment Plaintiff experienced from PIERRE WEBER on the dog policy at the restaurants. At first dogs were allowed in, and then later the policy was changed to not permit dogs. However, PIERRE WEBER would constantly create exceptions for is personal friends and would constantly flip-flop on the policy as to regular customers. Plaintiff believed that these exceptions were just an excuse for PIERRE WEBER to torment and harass Plaintiff. PIERRE WEBER would scream and reprimand Plaintiff and call Plaintiff, "a dumb Frenchman," when he informed regular customers that they could not be seated with their dogs. However, on other occasions PIERRE WEBER would verbally abuse Plaintiff and instruct Plaintiff to have those same regular customers with dogs leave, even though he had previously screamed at Plaintiff to allow them to sit outside with the dog. Plaintiff was constantly tormented and mentally abused on this issue.

44.    Another example is in regard to the reservation system, RESY. PIERRE WEBER had a strict policy that a fifty-dollar ($50) fee would be charged to guest who were late for their reservations and that no tables under three (3) guests were allowed to be booked. However, through RESY, reservations for two (2) were available. On one instance a customer made an online

reservation for two (2) and called to inform that he was going to be late and asked if it was possible to change his reservation to avoid paying late fee. Plaintiff made appropriate changes to the reservation. However, when PIERRE WEBER learned of this change, he was not happy, and alternatingly screamed at Plaintiff, in front of a packed restaurant and threatened him physically. When Plaintiff tried to calm PIERRE WEBER down and explain that the reservation was made by RESY and that he did not want to fight with him, PIERRE WEBER responded by saying that of course he would not because he would, "kick his French ass" and also said, "I've never seen such an idiotic French asshole like you." Plaintiff had to step outside to calm down and finish crying before finishing his shift.  The abuse was so bad that customers felt compassion for Plaintiff and stopped to ask him if he was ok.

45.    Finally, when Plaintiff's son had an allergic reaction and went into anaphylactic shock, Plaintiff had his phone with him in case of emergency calls. PIERRE WEBER soon saw Plaintiff with his phone and stated that there was a no phone policy on the floor. PIERRE WEBER shouted, "Do you only understand French? Asshole what did I say about telephones?" When Plaintiff tried to explain the situation, PIERRE WEBER screamed at Plaintiff in front of the restaurant that he did not care for the reason why Plaintiff had his phone, called him a, "fucking stupid French asshole" and then intensified his harassment of Plaintiff. PIERRE WEBER then required Plaintiff to perform other job duties, such as unloading PIERRE WEBER'S truck, staying at the host stand, running food and drinks that had already been run, taking orders and having Plaintiff finish other employee's tasks. Shortly after, PIERRE WEBER told Plaintiff he, "didn't want French assholes who can't follow directions."

46.    Because of the constant abuse, Plaintiff could not sleep, eat, or function properly. Plaintiff lost thirty pounds (30 lbs) as a result of the stress caused by the discrimination and

harassment that came with working at Pierre's. Plaintiff suffered extreme mental anguish and could not function properly.

47.    Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs and Class members for all hours, including overtime.

48.    Defendants knowingly and willfully operated their business with a policy of not paying proper wages to Plaintiff, FLSA Collective Plaintiffs and Class members. Defendants were not entitled to claim any tip credits under FLSA or NYLL.

49.    Defendants knowingly and willfully operated their business with a policy of not paying spread of hours premium to Plaintiff and Class members, in violation of the NYLL.

50.    Defendants knowingly and willfully operated their business with a policy of improperly deducting a lodging credit despite the lodging not satisfying the requirements under the NYLL.

51.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.

52.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to employees, at the beginning of employment and at dates of all wage changes thereafter, pursuant to the requirements of the NYLL.

53.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

## **VIOLATION OF THE FAIR LABOR STANDARDS ACT**

54.    Plaintiff realleges and reavers Paragraphs 1 through 53 of this class and collective action Complaint as fully set forth herein.

55.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

56.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

57.    At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

58.    At all relevant times, Defendants had a policy and practice of failing to pay the statutory proper wage to Plaintiff and FLSA Collective Plaintiffs for their hours worked. Defendants were also not entitled to claim any tip credits under the FLSA.

59.    At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA to Plaintiff and FLSA Collective Plaintiffs by instituting an illegal tip-pooling scheme in which management retained a portion of the tips and included managers in the tip pool.

60.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs the full amount of wages due including overtime. Defendants also had an improper lodging credit, in violation of the FLSA.

61.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records

by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then

seek leave of Court to amend this Complaint to set forth the precise amount due.

62.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective

Plaintiffs of their rights under the FLSA.

63.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff

and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the

FLSA.

64.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA

Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages

due to an invalid tip credit, damages representing disgorgement of illegally retained tips, unpaid

wages including overtime, unpaid wages due to improper lodging credit, plus an equal amount as

liquidated damages.

65.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable

attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

66.    Plaintiff realleges and reavers Paragraphs 1 through 65 of this class and collective

action Complaint as fully set forth herein.

67.    At all relevant times, Plaintiff and Class members were employed by the Defendants

within the meaning of the NYLL §§ 2 and 651.

68.    Defendants willfully violated Plaintiff and the Class members' rights by instituting an

illegal tip-pooling scheme in which Class members were required to share tips with management.

In doing so, Defendants willfully deprived Plaintiff and Class members of their lawfully earned

wages.

69.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL. Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the requirements under the NYLL because such tip credit allowance was never clearly included in wage statements to tipped employees for each payment period. Defendants also provided fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation, including tips illegally withheld from Plaintiff and Class members.

70.    Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours each workweek.

71.    Defendants willfully violated Plaintiff's and Class members' rights by taking an improper lodging credit deduction from their wages. Deductions were not "for the benefit of employee" under the NYLL as the housing provide was not adequate. The rooms did not have windows, the bathroom was unfinished and exposed to electrical hazards, and the house had no gas, no heating, and no air conditioning. As a result, this deduction resulted in a financial gain for the employer at the expense of the employee. Therefore, Defendant's deduction for lodging credit were improper.

72.    Defendants willfully violated Plaintiff and Class members' rights by failing to pay "spread of hours" premiums to them for each workday that exceeded ten (10) or more hours.

73.    Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them proper wages in the lawful amount for hours worked. Defendants were not entitled to claim any tip credits.

74.     Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the NYLL.

75.     Due to the Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants unpaid wages due to an invalid tip credit, damages representing disgorgement of illegally retained tips, unpaid wages including overtime, unpaid wages due to improper lodging credit, unpaid spread of hours premium, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

**COUNT III**

**<u>BREACH OF CONTRACT</u>**

76.     Plaintiff realleges and reavers Paragraphs 1 through 75 of this class and collective action Complaint as fully set forth herein.

77.     Plaintiffs have performed all conditions, covenants, and promises required to be performed as of the date herein in accordance with the terms of the Agreement.

78.     Defendants knew that the terms of the Contract contained a provision requiring Defendants to pay Plaintiff two hundred fifty dollars ($250) per shift, therefore five hundred dollars ($500) for days Plaintiff worked double shifts. Furthermore, Defendants knew that had all times Plaintiff was entitled to receive five percent (5%) of tips.

79.      Defendants agreed to and executed the Contract for good and fair consideration.

80.     Defendant knew that failure to meet the contractual terms of the Agreement, including the provision requiring payment including amount of tips received would result in a violation of the terms of the Agreement.

81.     Defendant breached the terms of the Agreement.

82.     The elements for a cause of action for breach of Contract are: (1) formation of a contract between the parties: (2) performance by one party; (3) failure to perform by another party; and (4) resulting damage.

83.     Despite the Plaintiff, performing his obligations under the terms and conditions of the Contract, the Defendant, breached the Contract's provisions requiring Defendants to pay Plaintiff at a certain rate and a certain percentage of tips.

84.     As a result of said breach, the Plaintiff has sustained damages, including the legal defense of the excess issues.

**COUNT IV**

**<u>DISCRIMINATION UNDER THE</u>**

**<u>NEW YORK STATE HUMAN RIGHTS LAW</u>**

85.     Plaintiff realleges and reavers Paragraphs 1 through 84 of this class and collective action Complaint as fully set forth herein.

86.     At all relevant times, Plaintiff was an employee within the meaning of the New York State Human Rights Law ("NYSHRL").

87.     At all relevant times, Defendants were and continues to be an employer within the meaning of the NYSHRL

88.     At all relevant times, Defendants had at least four persons in its employ, and therefore Defendants and its agents and employees were and are required to comply with the NYSHRL.

89.     At all relevant times, Defendants knew that Plaintiff was an employee of French origin.

90.     Section 296(1)(a) of the NYSHRL prohibits employers from discriminating against an employee because of national origin or race "in terms, conditions or privileges of employment."

91.    Section 296(6) of the NYSHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

92.    As alleged herein, Defendants violated the NYSHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation, fostering, and maintenance of a hostile work environment.

93.    This hostile work environment was created and fostered through pervasive and regular harassment in the form of comments and behavior directed towards Plaintiff.

94.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

95.    Defendant was on notice of the conduct constituting the hostile work environment and took no action to resolve it. Specifically, Plaintiff complained to his manager, PIERRE WEBER, on several occasions about the abuse he was subject to, but PIERRE WEBER took no steps to stop it, and in fact was the main culprit in propagating the hostile work environment. Defendants' failure to address the hostile work environment constituted a violation of Section 296(1)(a) of the NYSHRL.

96.    Defendants violated the New York State Human Rights Law when they discriminated against Plaintiff on the basis of his national origin and as a response to Plaintiffs complaints for Defendants to honor the employee agreement, restaurant policies, and wage laws..

97.    Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under the New York Executive Law § 296.

98.    As a result of Defendants' discrimination against the Plaintiff, Plaintiff sustained

injuries, including economic damages, past and future emotional distress and the costs of bringing this action.

99.     Due to Defendants' violation under the NYSHRL, based on discrimination on the basis of national origin and race, Plaintiff is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices as described herein, (2) back pay, (3) front pay, (4) compensatory damages, (5) punitive damages, and (6) attorneys fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages due under the FLSA and the NYLL, including those due to an invalid tip credit, and improper lodging credit;

d. An award equal to the amount of the improperly retained tips withheld by Defendants;

e. An award of unpaid spread of hours premiums due under the NYLL;

f. An award of statutory penalties as a result of Defendants failure to comply with NYLL wage notice and wage statement requirements;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

h.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

i.   An award of all applicable damages under the NYSHRL;

j.   An award of all applicable damages for Defendants' breach of contract;

k.   An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

l.   Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

m.  Designation of this action as a class action pursuant to F.R.C.P. 23;

n.   Designation of Plaintiff as Representatives of the Class; and

**o.**   Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demand trial by jury on all issues so triable as of right by jury.

Dated: March 1, 2021

Respectfully submitted,

By:   */s/ C.K. Lee*
      C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs and the Class*